UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>APPROXIMATELY $2,028,163.59 IN<br>FUNDS SEIZED FROM BANK ACCOUNT<br>NO. 167108214 at BURKE & HERBERT<br>BANK, IN THE NAME OF WTC2, INC.,<br>ALSO KNOWN AS OPERATING ACCOUNT<br>WTC2, INC. ("BH Account x8214")<br><br>        Defendant *in Rem*. | Case No. 1:15-cv-01670 (AJT/IDD) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Entry of Default Judgment and Order of Forfeiture ("Motion") against funds in account #167108214 at Burke & Herbert Bank ("Defendant Property" or "Defendant Funds"), pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 66. Upon consideration of the Complaint, Plaintiff's Motion for Entry of Default Judgment and the supporting documentation thereto, the undersigned Magistrate Judge makes the following findings and recommends that the Motion be **GRANTED**.

### I. INTRODUCTION

On December 18, 2015, Plaintiff, United States of America ("Government" or "Plaintiff"), filed its Verified Complaint *in rem* seeking forfeiture of assets arising from a scheme to illegally employ aliens and to launder and structure the proceeds of that scheme to evade detection. Dkt. No. 1. In its Complaint, Plaintiff seeks forfeiture of all right, title and interest in approximately

1

$2,028,163.59 in United States currency seized from bank account #167108214 at Burke & Herbert Bank ("BH Account x8214"), in the name of WTC2, Inc. Compl. ¶ 1.

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345 because the United States is the Plaintiff and 28 U.S.C. § 1355(a) because the government is seeking a forfeiture. Compl. ¶ 4.

This Court has *in rem* jurisdiction over Defendant Property under 28 U.S.C. § 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia. *Id.* ¶ 5. This Court has *in rem* jurisdiction over Defendant Property under 28 U.S.C. § 1355(b)(1)(B) because the Defendant Property is located in the Eastern District of Virginia. *Id.* Therefore, this Court has jurisdiction over the matter.

Because the acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia, venue is proper in this District, pursuant to 28 U.S.C. § 1355(b)(1)(A). Venue is also proper in this District because the cause of action accrued in this District and the Defendant Property is located in this District. *See* 28 U.S.C. § 1395(a).

### B. Service of Process

On December 18, 2015, a Warrant of Arrest *In Rem* was issued and given to the U.S. Attorney for service. Dkt. No. 3. The docket does not contain any record that a copy of the warrant was served on the custodian of the property. The Warrant of Arrest *In Rem* was re-issued on August 21, 2020 (Dkt. No. 62) and returned executed by a U.S. Department of Labor special agent on August 27, 2020. Dkt. No. 63. Beginning in February 2016, notice of this civil forfeiture action was published on an official government internet site, www.forfeiture.gov, for 30 days, pursuant to Supplemental Rule G(4)(a), and notice of publication was filed with the Clerk of Court on May

5, 2016. Dkt. No. 26. Direct notice of this civil forfeiture action and a copy of the Complaint were delivered via U.S. Postal Service certified mail on December 28, 2015 to all persons believed to have an interest in the Defendant Property, pursuant to Supplemental Rule G(4)(b). Dkt. No. 66 ¶2. The government received the return receipts on the three notices sent to Rafik Moheyeldin, Alaa Nimr Garada and WTC2, Inc. in the care of Alaa Nimr Garada, the registered agent for WTC2, indicating delivery on December 31, 2015. *Id.* Therefore, Plaintiff properly executed process and notice.

### C.  Grounds for Default

Plaintiff filed its Complaint to enforce forfeiture of Defendant Property on December 18, 2015. Dkt. No. 1. WTC2, Inc. and its two owners, Alaa Garada and Rafik Moheyeldin, made timely claims on the Defendant Property. Dkt. Nos. 5, 11, 15. No other individual or entity has an interest in Defendant Funds or has filed a claim in this matter, and time for doing so has lapsed. Dkt. No 66 at ¶3. On February 6, 2020, Garada and Moheyeldin pleaded guilty to unlawful employment of unauthorized aliens and wire fraud. *Id.* ¶4. *See also United States v. Alaa Nimr Garada*, Case No. 1:20-cr-27 (E.D. Va. Feb. 6, 2020) (Dkt. No. 7); *United States v. Rafik Moheyeldin*, Case No. 1:20-cr-28 (E.D. Va. Feb. 6, 2020) (Dkt. No. 6). In their plea agreements, Garada and Moheyeldin agreed that Defendant Funds constituted proceeds of the unlawful activities to which they pleaded guilty and to withdraw their claims to the Defendant Property. Dkt. No. 66 ¶4. On June 29, 2020, Judge Trenga granted the claimants' Motion to Withdraw (Dkt. No. 57) their personal claims and that of WTC2, Inc. to the Defendant Property. Dkt. No. 58. On June 9, 2020, Plaintiff filed a Request for Entry of Default with the Clerk of Court. Dkt. No. 54. On September 1, 2020, the Clerk entered Default against all persons and entities claiming an interest in Defendant Property for failure to plead or defend the action. Dkt. No. 65. On September

16, 2020, Plaintiff filed its Motion for Entry of Default Judgment requesting that Defendant Property be forfeited to the United States. Dkt. No. 66. The undersigned Magistrate Judge then took this matter under advisement to issue this Report and Recommendation.

## II.   FACTUAL FINDINGS

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiff has established the following facts. World Trade Company ("WTC2") and US Plastics LLC ("US Plastics") are owned and operated by Alaa Garada and Rafik Moheyeldin. Compl. ¶ 16. WTC2, which purchases and resells used goods, is incorporated in Virginia and its principal place of business is in Woodbridge, Virginia. *Id.* ¶ 17. US Plastics, which collects, sorts and processes bulk plastic materials, conducts some of its operations at the same warehouse in Woodbridge as WTC2. *Id.*

WTC2 unlawfully employed aliens not authorized to work in the United States, and the proceeds from the business were deposited into BH Account x8214. *Id.* ¶19. BH Account x8214 is the operating account for WTC2. *Id.* ¶18. On behalf of WTC2, Garada submitted applications to the Department of Labor and Department of Homeland Security ("DHS") for petitions for H-1B specialty occupation work visas for family members to work at WTC2, but they included false and fraudulent supporting documents. *Id.* ¶20. On some H-1B applications, Garada reported having 30 to 54 employees working at WTC2, but a check of Virginia Employment Commission wage records from 2010 through the third quarter of 2014 showed it had a single employee—Garada's wife Rim El Naka. *Id.* ¶21. WTC2 employs several dozen workers, including Khaled Garadah, Alaa Garada's nephew, who is in the United States on an F-1 Student Visa and is not authorized to work in the United States. *Id.*

4

Many of the unlawfully employed aliens were paid in cash, which was withdrawn from BH Account x8214 by Garada or Moheyeldin in weekly increments of $9,000. *Id.* ¶23. Keeping the withdrawals less than $10,000 enabled the owners to conceal their activities by avoiding transaction reporting requirements. *Id.*

The owners submitted false or fraudulent documents to support applications to the Departments of Labor and Homeland Security for work visas for family members. *Id.* 20. On an I-129 petition filed on behalf of his sister-in-law, Lina, attested to under penalty of perjury, Garada supplied a graduation certificate purported to have been issued to Lina by Ain Shams University in Cairo, Egypt, awarding her a Bachelor's degree in business and accounting on September 30, 2011. *Id.* ¶29. The university has no record of Lina's attendance. *Id.*

Records, including job applicant information supplied by WTC2, government surveillance and bank records, show that 10 of 50 people employed by WTC2 during 2014 and/or 2015 were not authorized by DHS to work in the United States. *Id.* ¶31. While executing a search warrant on WTC2 and US Plastics, federal agents identified 25 employees as aliens illegally employed by the companies. *Id.* These included an Italian citizen in the United States under the Visa Waiver Program (*Id.* ¶32), which provides for visa-free travel by nationals of designated countries for tourism for up to 90 days. *Id.* ¶14. Visitors are not authorized to work for a US employer. *Id.*

Pursuant to Section 1324(a) of Title 8, U.S. employers may only hire individuals legally eligible to work in the United States. *Id.* ¶12. To comply with the law, employers must verify the identity and employment authorization of every new hire. *Id.* The aliens identified during the execution of the search warrant included an El Salvadoran national whose employment eligibility was never verified and who was paid in cash and by personal check drawn on the personal account of a WTC2 manager (*Id.* ¶34); a person whose reported Social Security number ("SSN") belonged

to a deceased individual (*Id.* ¶36); a person with a fake SSN who was paid from a manager's personal bank account (*Id.* ¶37); another person with a fake SSN who was paid in cash (*Id.* ¶38); and an employee from whom WTC2 only acquired his name and paid in cash (*Id.* ¶39).

Money collected by WTC2 from its customers were deposited in BH Account x8214, and that income was generated based in part on the work performed by WTC2's unlawfully employed workers. *Id.* ¶42. Between March 26, 2015 and August 6, 2015, some 21 cash withdrawals, each for $9,000, were made from BH Account x8214 in the total amount of $189,000. *Id.* ¶43. On or about March 26, 2015, Garada deposited 13 money orders into BH Account x8214. *Id.* ¶44. Ten money orders were for $1,000. *Id*. Garada gave conflicting accounts regarding the purpose of the money orders. *Id.* He then made a $9,000 cash withdrawal, he said, to pay his "unbanked employees." *Id.* Garada is familiar with currency transaction reporting requirements and has previously structured cash withdrawals to avoid those reporting requirements. *Id.* ¶45.

### III.   EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a valid claim). A defendant in default concedes the factual allegations of the complaint and is barred from contesting them on appeal. *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations

in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law, and it is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate the Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a Plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### A. Basis of Forfeiture

Plaintiff contends that the funds in BH Account x8214 are proceeds traceable to an illegal scheme to employ aliens, were part of an effort to promote and conceal money laundering and were involved in money laundering transactions. As such, Defendant Property is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) and 31 U.S.C. § 5317(c)(2). Garada and Moheyeldin pleaded guilty to unlawful employment of unauthorized aliens and wire fraud and have withdrawn their claims on Defendant Property.

**1. Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(A)**

Any property, real or personal, involved in a transaction or attempted transaction in violation of money-laundering statutes 18 U.S.C. §§ 1956 and 1957, or any property traceable to such property, is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(A). To obtain forfeiture, the government must show that the subject property had a "substantial connection" to the crime on which forfeiture is predicated. *See United States v. Manlapaz*, 2020 U.S. App. LEXIS 26354, *13 (4th Cir. Va. August 19, 2020), *United States v. Miller*, 911 F.3d 229, 232 (4th Cir. 2018). Property involved in a money-laundering offense is forfeitable in its entirety, even if comingled with legitimate funds. *Id*.

Here, the Government is alleging a violation of section 1956(a)(1). "To prove a violation of that statute, the government must show that (1) the defendant conducted or attempted to conduct a financial transaction; (2) the property involved the proceeds of specified unlawful activity; (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; (4) the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity; or (5) while knowing that the transaction was designed in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity." *See United States v. Blalock*, No. 95-5280, No. 95-5295, 1996 U.S. App. LEXIS 11487, at *8-9 (4th Cir. May 20, 1996), 18 U.S.C. § 1956.

In this case, the funds in BH Account x8214 include proceeds from the former claimants' unlawful employment of aliens. Under 8 U.S.C. § 1324a, it is unlawful for a person or other entity to knowingly hire for employment in the United States an unauthorized alien or to hire for employment in the United States an individual without complying with the employment

8

verification requirements of subsection (b). *See United States v. Garcia-Ochoa*, 607 F.3d 371, 377, 2010 U.S. App. LEXIS 11938, *13-14 (4th Cir. Va. June 11, 2010) (It is "illegal not merely to hire unauthorized aliens but, more broadly, to employ them.").

The undersigned finds that the Government alleges sufficient facts to demonstrate that the former claimants unlawfully employed at WTC2 aliens who were ineligible to work in the United States and conducted financial transactions designed to continue the illegal activity and conceal the nature of the ill-gotten gains. WTC2's own job applicant records, government surveillance and bank records show that during 2014 and/or 2015 WTC2 employed about 10 people who were not authorized by DHS to work in the United States. *Dkt. No. 66* ¶31. While executing a search warrant on WTC2 and US Plastics, federal agents identified 25 workers as aliens illegally employed by the companies. *Id.* These included a foreign national whose employment eligibility was never verified and who was paid in cash and by personal check drawn on the personal account of a WTC2 manager (*Id.* ¶34); foreign nationals with fake Social Security numbers (*Id.* ¶¶36-37); and an employee from whom WTC2 only acquired his name and paid in cash (*Id.* ¶39).

WTC2's profits were derived from the work performed by unlawfully employed aliens and deposited into BH Account x8214. The proprietors made structured cash withdrawals of under $10,000 to avoid reporting requirements and used cash to pay unauthorized workers. Thus, Defendant Property had a substantial connection to the illegal activity.  Garada and Moheyeldin structured withdrawals and paid employees in cash knowing that each transaction was designed in whole or in part to promote the illegal enterprise or to conceal the nature, location, source, ownership or control of the proceeds of the unlawful activity, in violation of 18 U.S.C. § 1956 a(1)(A).

Because funds in the bank account involved money-laundering transactions that had a substantial connection to the illegal employment of aliens in violation of 18 U.S.C. § 1956 a(1)(A), all funds in BH Account x8214 are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A).

### 2. Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(C)

Any property that constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity," such as unlawful employment of aliens, or a conspiracy to commit such offense is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C). The Government contends that Defendant Property constitutes proceeds traceable to the illegal employment of aliens. WTC2, which purchases and resells used goods, unlawfully employed aliens to carry out the work. Compl. ¶ 19. Money earned by WTC2 is based in part on work performed by unlawfully employed workers. WTC2's proceeds were deposited into its operating account, BH Account x8214. In their plea agreements, Garada and Moheyeldin agreed that Defendant Funds constituted proceeds of the unlawful activities to which they pleaded guilty. *See United States v. $61,770 United States Currency*, No. 1:15-cv-00607 (GBL/TCB), 2017 U.S. Dist. LEXIS 9787, at *6 (E.D. Va. Jan. 24, 2017) (Proceeds are traceable to a violation when Defendant pleads guilty to the violation and agrees that property was properly seized.). Thus, the funds in BH Account x8214 are traceable to the unlawful activity of employing ineligible aliens and are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### 3. Forfeiture Pursuant to 31 U.S.C. § 5317(c)(2)

Property involved in money laundering or a conspiracy to launder money or is traceable to a violation of money laundering laws, including under section 5324 of Title 31, is subject to civil forfeiture. *See* 31 U.S.C. § 5317(c)(2). According to section 5324, it is unlawful to structure or

attempt to structure financial transactions to avoid reporting requirements, such as a currency transaction report for transactions in excess of $10,000. The Government must prove that the accused structured transactions in amounts under $10,000 for the specific purpose of evading the federal reporting requirements. *See United States v. $134,750 United States Currency*, No. RWT 09cv1513, 2011 U.S. Dist. LEXIS 90657, at *6 (D. Md. Aug. 15, 2011) (citing *United States v. Leak*, 123 F.3d 787, 793 (4th Cir. 1997)).

Garada and Moheyeldin paid illegally employed WTC2 workers in cash they withdrew from Defendant Property in weekly increments of $9,000. *Id.* ¶23. Between March 26, 2015 and August 6, 2015, some 21 cash withdrawals, each for $9,000, were made from BH Account x8214. *Id.* ¶43. By keeping cash withdrawals less than $10,000, Garada and Moheyeldin were able to conceal their activities by avoiding transaction reporting requirements. Garada is familiar with currency transaction reporting requirements and has previously structured cash withdrawals to avoid those reporting requirements. *Id.* ¶45. In the Statement of Facts accompanying their plea agreements, Garada and Moheyeldin acknowledge paying employees in cash to conceal their illegal activities and that their actions were taken willfully and with the intent to violate the law. *See United States v. Alaa Nimr Garada*, Case No. 1:20-cr-27 (E.D. Va. Feb. 6, 2020) (Dkt. No. 8); *United States v. Rafik Moheyeldin*, Case No. 1:20-cr-28 (E.D. Va. Feb. 6, 2020) (Dkt. No. 7). Thus, because Defendant Property was used as part of an effort to structure worker payments while evading transaction reporting requirements in violation of 31 U.S.C. § 5324, Defendant Property is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Entry of Default Judgment be **GRANTED**. The undersigned Magistrate Judge further recommends that an Order of Forfeiture be entered extinguishing any and all rights and interests that anyone may have in the Defendant Property and forfeiting the Defendant Property to the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) and 31 U.S.C. § 5317(c)(2).

## V. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record.

/s/ Ivan D. Davis
Ivan D. Davis
United States Magistrate Judge

December 3, 2020
Alexandria, Virginia